UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

                                                                Case # 16-CR-46-FPG

v.

                                                                 DECISION AND ORDER

EUGENE GOSY,
                                Defendant.
_____

## INTRODUCTION

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Here, enforcement of that guarantee requires the Court to balance Defendant Eugene Gosy's right to an attorney of undivided loyalty against his right to be represented by counsel of his choosing.

On February 2, 2017, United States Magistrate Judge H. Kenneth Schroeder, Jr. ("Magistrate Judge") granted the Government's motion for a determination of conflict of interest (ECF No. 11) and removed attorney Jesse Baldwin as Defendant's counsel of record in this case. ECF No. 46; *see* ECF No. 49. Defendant now appeals. ECF Nos. 47, 53. For the reasons stated below, the Magistrate Judge's decision is affirmed.

## BACKGROUND

A 114-count indictment charges Defendant with violations of 21 U.S.C. § 846 (conspiracy to distribute controlled substances), 21 U.S.C. § 841(a)(1) (unlawful distribution of controlled substances), 18 U.S.C. § 1349 (conspiracy to commit health care fraud), and 18 U.S.C. § 1347 (health care fraud). *See* ECF No. 1. With respect to the health care fraud counts, the Government alleges that, between October 2011 and August 2013, Defendant defrauded

insurance companies who paid New York State Workers' Compensation claims by billing for medical services supposedly rendered or personally supervised by him as a "Board Authorized Health Care Provider" despite the fact that he was actually out of town when the services were performed. *Id.* Should this case proceed to trial, the Government will bear the burden of proving beyond a reasonable doubt that Defendant "knowingly and willfully" executed a scheme or artifice to defraud a health care benefit program. *See* 18 U.S.C. § 1347.

The indictment specifically references two letters that give rise to the present dispute. ECF No. 1, at 17. The first letter, dated August 24, 2009, is a formal Administrative Warning sent to Defendant by the New York State Workers' Compensation Board. ECF No. 11, Ex. B ("Warning Letter"). The Warning Letter admonishes Defendant for certain acts of professional misconduct and reminds him that he must:

> Personally and actively supervise all professional medical services performed by registered nurses or other persons trained in laboratory or diagnostic techniques in accordance with Workers' Compensation Law Section 13-b(1)(c). Reports of instruction for such treatment, the treatment itself, the patient's condition and progress shall be signed and maintained by you when you are acting as the supervising attending physician.

*Id.*

The second letter, dated September 22, 2009, was sent to the Workers' Compensation Board by Defendant's attorney Jesse Baldwin. ECF No. 11, Ex. A ("Baldwin Letter"). The Baldwin Letter states that Defendant acknowledges receipt of the Warning Letter but has declined to sign it. *Id.* Importantly, the Baldwin Letter also states that Defendant "understands the regulatory requirements set forth in [the Warning Letter] and will make every effort to continue compliance with this and all other requirements applicable to medical providers rendering care to Workers' Compensation patients." *Id.* The letters themselves were used as exhibits in the grand jury proceeding. ECF No. 33, at 7.

To prove that Defendant acted "knowingly and willfully," the Government intends to call Mr. Baldwin as a witness. *See* ECF No. 33, at 8-10. The Government argues that Mr. Baldwin's testimony is necessary for two reasons. First, the Government intends to use Mr. Baldwin's testimony to introduce the Baldwin Letter into evidence as a statement made by an opposing party's agent pursuant to Federal Rule of Evidence 801(d)(2)(D). Second, the Government believes that Mr. Baldwin's testimony about the circumstances surrounding the Baldwin Letter will demonstrate that Defendant was aware of the New York State Workers' Compensation rules and intentionally circumvented them.

Believing that Mr. Baldwin's role as a witness presented at least a potential conflict of interest between him and Defendant, the Government filed a motion before the Magistrate Judge requesting an inquiry and a determination as to whether Mr. Baldwin must be disqualified or whether Defendant could waive the conflict. ECF No. 11. The Magistrate Judge initially denied the Government's motion, ECF No. 16, and the Government appealed, ECF No. 17. After hearing argument from the parties and appointing independent counsel to advise the Defendant, this Court reversed the Magistrate Judge's decision and remanded for further proceedings. ECF No. 29. This Court found:

> Although the extent to which a conflict exists is unclear at this time, it is evident that further investigation is necessary. Mr. Baldwin's representation of the Defendant in this case is potentially problematic not only because Mr. Baldwin may be called to testify as a fact witness, but also because the Defendant may want to raise a defense—such as good faith reliance on the advice of counsel—that puts his interests at odds with Mr. Baldwin's.

*Id.* at 3.

Upon remand, the Magistrate Judge held oral argument and received written submissions from both parties. *See* ECF Nos. 31, 33, 38, 40, 49. The Magistrate Judge concluded that although it is impossible to predict with certainty the precise nature of the proof at trial or the arguments raised by both sides, Mr. Baldwin's status as a witness creates an unwaivable conflict

of interest between him and Defendant. *See* ECF No. 49, at 8-16. Accordingly, the Magistrate Judge removed Mr. Baldwin as Defendant's counsel of record in this case. ECF No. 46.

Although he found that the conflict is unwaivable, the Magistrate Judge observed that any harm to Defendant is mitigated by two key factors. First, in addition to Mr. Baldwin, Defendant has also retained attorneys Herbert Greenman and Joel Daniels to represent him in this case. ECF No. 49, at 14 (noting that Mr. Greenman and Mr. Daniels "are two of the most well qualified, experienced defense criminal trial lawyers in the Western District" while Mr. Baldwin's practice is primarily focused on civil cases). Second, the Magistrate Judge pointed out that although Mr. Baldwin could no longer serve as Defendant's counsel of record, he is not barred from communicating with Defendant or Defendant's other attorneys. *Id.* at 20-21, 31.

## LEGAL STANDARD

Because the Magistrate Judge removed Mr. Baldwin pursuant to his authority under 28 U.S.C. § 636(b)(1)(A), this Court will review that decision to determine whether it was clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Local R. Crim. P. 59(b)(1).

## DISCUSSION

The Sixth Amendment right to assistance of counsel "was designed to assure fairness in the adversary criminal process." *Wheat v. United States*, 486 U.S. 153, 158 (1988). In most cases, fairness dictates that the defendant "may be represented by any counsel who will agree to take his case." *United States v. Cain*, 671 F.3d 271, 293 (2d Cir. 2012) (quoting *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir. 1982)). But "while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather

4

than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat*, 486 U.S. at 159. The right to effective assistance of counsel includes the right to be represented by an attorney who is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271 (1981).

In *United States v. Levy*, 25 F.3d 146 (2d Cir. 1994), the Second Circuit set forth the two-step analysis that district courts must follow whenever the "specter" of a conflict of interest arises between a criminal defendant and his chosen attorney. First, at the "inquiry" stage, the court must "investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *Id.* at 153. An actual conflict occurs "when, during the course of the representation, the attorney's and the defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980)).

Second, if the court's inquiry reveals the existence of an actual or potential conflict, the court has a "disqualification/waiver" obligation. *Levy*, 25 F.3d at 153. So long as the conflict does not fundamentally impair the lawyer's representation, the defendant may make a knowing and intelligent waiver of his right to conflict-free counsel pursuant to the procedure set out in *United States v. Curcio*, 694 F.2d 14 (2d Cir. 1982). However, if the conflict is "such that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation," then the court must immediately disqualify the attorney. *Levy*, 25 F.3d at 153; *see also Cain*, 671 F.3d at 293-94. Although the Sixth Amendment creates a presumption in favor of the defendant's counsel of choice, this presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Wheat*, 486 U.S. at 164. In determining whether to accept a defendant's waiver, the Court is also mindful

that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted with the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160.

Here, this Court agrees with the Magistrate Judge that there is a serious potential for a fundamental conflict of interest between Mr. Baldwin and Defendant and that a waiver would be unacceptable. Defendant, through his two remaining attorneys, raises various arguments in opposition to Mr. Baldwin's disqualification. These arguments are addressed in turn.

## I. Unwaivable Conflict

Defendant first argues that his right to choice of counsel should take precedence and that he should be afforded the opportunity to waive his right to conflict-free representation pursuant to the procedure outlined in *Curcio*. *See* ECF No. 53, at 9-11. The Court disagrees.

Three Second Circuit cases inform the Court's decision to refuse a waiver here. In *United States v. Jones*, 381 F.3d 114 (2d Cir. 2004), the district court found that the defendant's attorney had an unwaivable conflict where there was a possibility that the attorney would become a target of the grand jury's investigation, and at a minimum would be called to testify against the defendant. *Id.* at 117-18. The defendant argued on appeal that the district court erred by not allowing a waiver. *Id.* at 119. The Second Circuit disagreed, holding that "[t]he risk that [defendant's attorney] would become a witness at trial was enough alone to allow the district court to reach this determination under an abuse of discretion standard." *Id.* at 121. The defendant also argued that the conflict could have been resolved by stipulation, but the Second Circuit rejected that argument because any stipulation broad enough to cure the conflict would have been "akin to an admission of guilt." *Id.*

Similarly, in *United States v. Cain*, 671 F.3d 271 (2d Cir. 2012), the district court disqualified the defendant's attorney and refused a waiver due to the risk that the attorney would

be called as a government witness. *Id.* at 292-93. The Second Circuit affirmed, finding that the risk of the attorney becoming a witness against his client was sufficient to justify the district court's decision. *Id.* at 295-96.

In *United States v. Perez*, 325 F.3d 115 (2d Cir. 2003), the defendant waived his right to conflict-free representation and was subsequently convicted at trial. On appeal, the defendant argued that his right to effective assistance of counsel was violated because his attorney suffered from an unwaivable conflict of interest. *Id.* at 124. The Second Circuit disagreed and held that the district court acted within its discretion by allowing the waiver. *Id.* at 128. The court rejected the defendant's argument that his attorney should have been disqualified as a potential trial witness because any possibility of the attorney testifying was eliminated well in advance of the trial. *Id.* at 128.

The situation here is comparable to the situation faced by the district courts in *Jones* and *Cain*, and mandates the same result. The Government has indicated that it intends to call Mr. Baldwin as a witness at trial, both to introduce the Baldwin Letter into evidence and to elicit testimony regarding Defendant's knowledge of the New York State Workers' Compensation rules and intent to circumvent them. ECF No. 33, at 8-10. Mr. Baldwin's state of mind is an essential element of the health care fraud counts. *See* 18 U.S.C. § 1347. Although the Court cannot forecast with certainty what proof will be presented at trial, Mr. Baldwin's status as a trial witness is far from speculative and he has been served with a subpoena in this matter.[1] In its written submission, the Government identified Mr. Baldwin as a witness regarding the following factual issues:

---

[1] Defendant cites *United States v. Eldridge*, No. 09-CR-329A, 2012 WL 289925 (W.D.N.Y. Jan. 31, 2012) and argues that the conflict issue should be decided at a later date. The Court agrees with the Magistrate Judge that postponing a decision on this issue would be inappropriate. The record before the Court at this time is sufficient to demonstrate that Mr. Baldwin must be disqualified, and delaying the decision would create an undue risk that Defendant could be prejudiced by ineffective assistance of counsel. This case is markedly different from *Eldridge*, where the defendants' stated need to call their own prosecutor as a witness was "tenuous." *Id.*

- the scope of Mr. Baldwin's representation of Defendant
- whether and how Mr. Baldwin obtained the Warning Letter
- whether Mr. Baldwin read/reviewed the Warning Letter
- whether Mr. Baldwin observed Defendant reviewing the Warning Letter
- whether Mr. Baldwin discussed the contents of the Warning Letter with Defendant
- whether Defendant requested that Mr. Baldwin respond to the Warning Letter on his behalf
- the nature and content of any communications between Defendant and Mr. Baldwin related to the creation of the Baldwin Letter, including communications regarding the relevant New York State Workers' Compensation rules
- who wrote the Baldwin Letter
- whether Mr. Baldwin in fact signed the Baldwin Letter
- whether Mr. Baldwin consulted with Defendant before drafting the Baldwin Letter
- whether the Baldwin Letter is true and accurate
- whether the Baldwin Letter was given to Defendant before it was sent to the Workers' Compensation Board
- whether Mr. Baldwin witnessed Defendant reviewing the Baldwin Letter before it was sent to the Workers' Compensation Board
- who sent the Baldwin Letter to the Workers' Compensation Board

ECF No. 33, at 7-8.

As the Magistrate Judge pointed out, the relationship between Mr. Baldwin and Defendant appears to be rife with conflict no matter the substance of Mr. Baldwin's testimony. If Defendant was fully aware of the regulatory requirements described in the Warning Letter and was personally involved in drafting the Baldwin Letter, then Mr. Baldwin's professional obligation to act in his client's best interest would be compromised by his obligation to offer truthful testimony under oath. If Mr. Baldwin drafted and sent the Baldwin Letter without Defendant's knowledge or permission, or misled Defendant regarding the New York State Workers' Compensation rules, then his testimony would contradict an explicit statement he made in the Baldwin Letter—namely, that Defendant understood the regulatory requirements set forth in the Warning Letter. In those scenarios, Mr. Baldwin's obligation to act in his client's best interest would be compromised by his interest in protecting his own professional reputation and not testifying about his false representations. *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) (explaining that an attorney with first-hand knowledge of the events presented at trial

8

"may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client").

The Court does not speculate as to the relative likelihood of these scenarios or of any others. Rather, these scenarios are merely illustrative of the fact that, no matter the substance of Mr. Baldwin's testimony, his status as a likely trial witness means that his interests are inevitably and fundamentally incompatible with Defendant's. No rational defendant would knowingly and intelligently desire Mr. Baldwin's representation in this case. *Levy*, 25 F.3d at 153.

## II. Defendant's Proposed Stipulation

Defendant's offer to stipulate to the authenticity of the Baldwin Letter, *see* ECF No. 53 at 11, does nothing to change the analysis. Even if the authenticity of the Baldwin Letter is undisputed, the Government would need Mr. Baldwin's testimony to lay the proper foundation for its admittance into evidence under Rule 801(d)(2)(D).[2] And even if Defendant stipulated to the proper foundational facts and allowed the Baldwin Letter into evidence without objection, the Government could still call Mr. Baldwin to testify regarding the circumstances surrounding the letter. Like in *Jones*, a stipulation broad enough to render Mr. Baldwin's testimony unnecessary is unlikely to occur because it would be "akin to an admission of guilt." 381 F.3d at 121; *see* ECF No. 33, at 12 ("[I]t is the government's understanding that the defendant is unwilling to stipulate that he actually discussed the matters set forth in the letter with Mr. Baldwin, prior to Mr. Baldwin sending the letter, or that the assertions in the letter are true."). Unlike in *Perez*, this Court cannot foresee any reasonable scenario that would eliminate the need for Mr. Baldwin's testimony.

---

[2] Defendant's attorneys appear to acknowledge this fact. *See* ECF No. 53 at 11 ("Whether the letter is otherwise admissible is an evidentiary issue which the court can decide.").

## III. Attorney-Client Privilege

Next, Defendant argues that the Government should not be permitted to question Mr. Baldwin regarding the circumstances surrounding the Baldwin Letter because such information is protected by the attorney-client privilege. ECF No. 53, at 11-12. The Court disagrees.

The attorney-client privilege does not apply to all communications between client and attorney. Rather, because the privilege is intended to protect *confidential* communications, the privilege attaches only to "those communications which are intended to be confidential." *United States v. Tellier*, 255 F.2d 441, 447 (2d Cir. 1958), *cert. denied*, 358 U.S. 821 (1958); *see also Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962); *United States v. McDonald*, 313 F.2d 832, 835 (2d Cir. 1963); *United States v. Valencia*, 826 F.2d 169, 176 (2d Cir. 1987).

*Tellier* is particularly instructive here. Tellier was the head of an underwriting firm tasked with raising funds through a public offering on behalf of the Alaska Telephone Corporation ("ATC"). *Tellier*, 255 F.2d at 443-44. He employed an attorney named Cahn to handle processing before the Securities & Exchange Commission. *Id.* at 443. After two debt offerings, Tellier received information about ATC's precarious financial position and asked Cahn whether ATC could put out more bonds. *Id.* at 446. In a phone call with Tellier, Cahn warned against any additional public offerings because "this selling of bonds to pay back interest by the sale of new bonds will involve you in a Ponzi scheme." *Id.* at 447. It was agreed that Cahn would "write a letter to Tellier, with copies for Proctor and Jones,[3] substantially setting forth the telephone conversation and pointing out that for legal reasons there should not be any public sales at this time." *Id.* Cahn prepared the letter and sent it to Tellier, but the record was unclear as to whether Tellier ever actually forwarded it to Proctor and Jones. *Id.* The letter recited the substance of what Cahn had told Tellier over the phone and contained Cahn's

---

[3] Proctor and Jones were ATC executives. *Id.* at 443.

ultimate conclusion but did not use the phrase 'Ponzi scheme.' *Id.* at 447-48. Despite Cahn's warning, Tellier proceeded with the sale of the additional bonds and was ultimately charged with securities fraud. *Id.* at 445.

At trial, the district court allowed Cahn to testify regarding his phone conversation with Tellier. *Id.* at 446. After he was convicted, Tellier appealed and argued that his communication with Cahn was protected by the attorney-client privilege. *Id.* The Second Circuit rejected that argument because "communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others." *Id.* at 447. The court further reasoned that "where, as here, information is given and it is agreed that it is to be transmitted to a third party, then not only the specific information, but the more detailed circumstances relating to it are subject to disclosure." *Id.* at 448 (citing *United States v. Shibley*, 112 F. Supp. 734, 742 (S.D. Cal. 1953)). Thus, although the letter was couched in more formal language than the phone conversation, the 'Ponzi scheme' statement was not protected. *Id.* Even assuming that Cahn's use of that phrase had not been intended to be communicated further, it was "too closely connected" with information that *was* intended to be communicated and could not be "severed from the entire subject matter of which it was contemplated that Proctor and Jones were to be informed." *Id.*

To be sure, the Court cannot issue a blanket ruling regarding Mr. Baldwin's testimony at this stage. That may be resolved at a later proceeding. But to decide whether Mr. Baldwin must be disqualified, it is sufficient to say that not all communications between Mr. Baldwin and Defendant regarding the Baldwin Letter will be privileged. Because the Baldwin Letter was sent to a third party, the circumstances relating to it may be subject to disclosure under *Tellier*. The attorney-client privilege therefore does not eliminate the need to disqualify Mr. Baldwin.

11

## IV. Self-Incrimination

Defendant also argues that information regarding Defendant's response to the Warning Letter, including the Baldwin Letter itself, should be precluded under *Garrity v. State of New Jersey*, 385 U.S. 493 (1967). Again, this argument is unavailing.

In *Garrity*, New Jersey police officers were questioned as part of an investigation regarding irregularities in handling certain municipal court cases. *Id.* at 494. Before being questioned, each officer was told "(1) that anything he said might be used against him in any state criminal proceeding; (2) that he had the privilege to refuse to answer if the disclosure would tend to incriminate him; but (3) that if he refused to answer he would be subject to removal from office." *Id.* The officers answered the questions, were subsequently prosecuted for conspiracy to obstruct the administration of traffic laws, and their statements were used against them at trial. *Id.* at 495.

The Supreme Court reversed the officers' convictions and held that the use of their statements at trial violated the protection against compelled self-incrimination embraced by the Fifth and Fourteenth Amendments. *Id.* at 500. Because the officers were forced to choose between self-incrimination or job forfeiture, they were deprived of a "free choice to admit, to deny, or to refuse to answer" and their statements could not be considered voluntary. *Id.* at 496-97 (quoting *Lisenba v. People of State of California*, 314 U.S. 219, 241 (1941)). Importantly, the facts presented were "quite different from the situation where one who is anxious to make a clean breast of the whole affair volunteers the information." *Id.* at 499.

Here, unlike in *Garrity*, there is no indication that Defendant was deprived of his ability to admit, deny, or refuse to answer the Warning Letter. By its own terms, the Warning Letter is not part of an ongoing investigation into Defendant's medical practice but rather the *consequence* of an investigation that had already occurred. *See* Warning Letter at 1

(summarizing the findings of an investigation into Defendant's professional misconduct and then stating: "The Board has determined that the appropriate way to handle this matter is to issue a formal administrative warning"). The Warning Letter does ask Defendant to sign his name to indicate that the warning has been "agreed to and accepted," *see id.* at 3, but does not mandate that he do so under the threat of losing his medical license. On the contrary, the Warning Letter expressly sets forth the consequences that would have followed if Defendant had chosen to not respond at all:

> If you choose not to agree with this administrative warning, your objection(s) will be noted but be advised that the Board still regards the administrative warning as having been issued upon confirmation of delivery to you by United Parcel Service.

*Id.* Therefore, given the record before the Court at this time, *Garrity* is inapplicable and does not eliminate the unwaivable conflict of interest between Defendant and Mr. Baldwin.

## V. Prejudice

Defendant argues that the Magistrate Judge mischaracterized Mr. Baldwin's importance to the defense team and that relieving him as counsel will cause "irreparable harm." *See* ECF No. 53 at 8-9, 14. The Court accepts that Mr. Baldwin may be well-versed in the medical and regulatory issues that are relevant to this case and that such expertise, along with Mr. Baldwin's long-standing relationship with Defendant, would benefit Defendant. But the Magistrate Judge correctly pointed out that any harm to Defendant is minimal given that (1) Defendant has also retained Mr. Greenman and Mr. Daniels, two very capable criminal defense lawyers with extensive trial experience; and (2) Mr. Baldwin is not barred from communicating with Defendant or Defendant's other attorneys.

Furthermore, even if Mr. Baldwin was the only attorney representing Defendant in this case, the fact remains that Mr. Baldwin's status as a likely trial witness in this case creates an

unwaivable conflict of interest between him and Defendant. *See Jones*, 381 F.3d at 121; *Cain*, 671 F.3d at 295-96. Therefore, Mr. Baldwin must be disqualified.

## VI. This Court's Interest In Ensuring A Fair Trial

Finally, the Court notes that Mr. Baldwin would still be disqualified even if it could be guaranteed that his involvement in the case would not prejudice Defendant himself in any way. In *Wheat*, the Supreme Court recognized that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted with the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160.

The New York Rules of Professional Conduct provide that a lawyer "shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. R. Prof'l Conduct 3.7.[4] This is because, in addition to the potential for a conflict of interest between attorney and client, "[c]ombining the roles of advocate and witness can prejudice the tribunal and the opposing party." *Id.* cmt. 1. Therefore, even if it turns out that Mr. Baldwin's testimony somehow aligns with Defendant's interests and Mr. Baldwin is called as a defense witness rather than a government witness, disqualification would be necessary. *United States v. Fulton*, 5 F.3d 605, 610 (2d Cir. 1993) ("An attorney cannot act both as advocate for his client and a witness on his client's behalf."); *see also Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 283 (2d Cir. 2004) ("We have suggested that where an attorney must take the stand to represent a client, a trial judge could, in his or her discretion, avoid any problems simply by requiring the party to retain new counsel."); *United States v. Kwang Fu Peng*, 766 F.2d 82, 86-87 (2d Cir. 1985); *Cunningham*, 672 F.2d at 1074. "If an attorney will not perform his ethical duty, it is up to the courts to perform it for him." *Locascio*, 6 F.3d at 934.

---

[4] The exceptions to that rule are inapplicable here. *See id.* Rule 3.7(a)(1)-(5).

Further, even if Mr. Baldwin is never called to testify by either party in this case, admittance of the Baldwin Letter into evidence would effectively make Mr. Baldwin an "unsworn witness" at trial. "An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial." *Locascio*, 6 F.3d at 933. In this situation, the attorney's role as advocate "may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." *Id.* Defendant's offer to waive his right to conflict-free counsel does not cure the unsworn witness problem because "the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired." *Id.* at 934. Thus, even if Mr. Baldwin is never called to testify, he would not be permitted to represent Defendant at trial. *Jones*, 381 F.3d at 121 ("If [defendant's attorney] turns out to be an actual or unsworn witness in defendant's trial, this would be actual grounds for disqualification.").

## CONCLUSION

For the reasons stated above, the Magistrate Judge's decision to remove Mr. Baldwin as Defendant's counsel of record in this case is AFFIRMED.

IT IS SO ORDERED.

Dated: May 12, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court