**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                              **Plaintiff,**

              **v.**                                              **16-CR-46G**

**EUGENE GOSY,**

                              **Defendant.**

### REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. Frank P. Geraci,

Jr., in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and

report upon dispositive motions.

### PRELIMINARY STATEMENT

The defendant, Eugene Gosy ("the defendant"), is charged in a

multi-count Superseding Indictment with having violated Title 21 U.S.C. §§ 846 and

841(a)(1), Title 18 U.S.C. §§ 1349, 1347 and 2.   Dkt. #66.   The defendant has filed

motions wherein he seeks to have the Superseding Indictment dismissed by reason of

his assertions that specific counts charged in the indictment are legally deficient and/or

improper.   Dkt. #83.   The government has filed its opposition to this motion of the

defendant.   Dkt. #88.

The defendant also seeks to have the indictment dismissed "on the basis that many of the counts are either duplicitous or multiplicitous and, therefore, cause prejudice to the defense."   Dkt. #83, ¶ 185; Dkt. #98, pp. 7-8.

The government has filed its opposition to the defendant's claims of duplicity and/or multiplicity.   Dkt. #88, pp. 58-59; Dkt. #103, pp. 8-10.

The defendant seeks to have the Court "strike the unnecessary surplusage contained in the indictment, to wit, the language that "repeats, realleges and incorporates by reference previous paragraphs that are irrelevant and prejudicial to the defense."   Dkt. #83, §73.   The government has filed it opposition to this claim of the defendant.   Dkt. #88, pp. 30-31.

Lastly, the defendant also seeks to suppress the evidence seized pursuant to search warrants authorizing the search of his medical office in Williamsville, New York and the search of the office of Medent Environmental located in Auburn, New York.   Dkt. #83, pp. 63-77, ¶s 147-183; Dkt. #98, pp. 3-6.   As part of this motion the defendant also seeks a *Franks* hearing.   Dkt. #83, p. 68, ¶ 166; Dkt. #98, p. 6.

The government has filed its opposition to this motion.   Dkt. #88, pp. 43-58; Dkt. #103, pp. 1-8.

## DISCUSSION AND ANALYSIS

**Motion Seeking Dismissal of the Indictment:**

### A.  Legal Sufficiency of Counts 1-148 Contained in the Indictment

Count 1 of the indictment charges the defendant with a conspiracy to violate Title 21 U.S.C. § 846 during the period June 2006 through April 27, 2016 in that he "did knowingly, willfully and unlawfully combine, conspire, and agree with others, known and unknown to the grand jury . . . to distribute and dispense, and to cause to be distributed and dispensed controlled substances, other than for a legitimate medical purpose and not in the usual course of professional practice . . . "   Dkt. #66.

Counts 2 through 148 of the indictment charge substantive counts of "unlawful distribution and dispensing of controlled substances in violation of Title 21 U.S.C. § 841.   Counts 2, 3 and 4 also include a charge that such "unlawful distribution and dispensing" of a named controlled substance resulted in the death of a referenced individual "from the use of such substance."   Dkt. #66.

The defendant asserts that Count 1 of the indictment is defective because as it reads, it "suggests that it is a crime for the doctor to knowingly and intentionally prescribe the medication."   Dkt. #83, ¶ 64.   Further, the defendant argues that the charge fails to assert that it was the defendant's intent "to distribute [the controlled

substances] outside the course of professional practice" and that the "indictment does not set out the appropriate standard of care necessary to prescribe the medication." As a result, the charges in Count 1 as well as Counts 2 through 148 fail to meet or "satisfy the standard which the indictment must encompass."   Dkt. #83, ¶s 64-65.

As to Counts 2 through 4 alleging that death to a referenced individual "resulted" from the use of the substance illegally prescribed, the defendant argues that Title 21 U.S.C. § 841(b)(1)(C) is "clearly unconstitutional and is unconstitutional as applied to Dr. Gosy" because it does not require a "*mens rea*" and therefore, these counts "must be dismissed."   Dkt. #83, ¶s 66-67.

These arguments of the defendant are rejected as being without legal merit for the reasons that follow.

In resolving questions concerning the sufficiency of an indictment or charging document, the United States Supreme Court has provided the following guidance:

> In a number of cases the Court has emphasized two of the protections which an indictment is intended to guarantee, reflected by two of the criteria by which the sufficiency of an indictment is to be measured.   These criteria are, first, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'   Cochran and Sayre v. United States, 157 U.S.

> 286, 290; Rosen v. United States, 161 U.S. 29, 34."
> Hagner v United States, 285 US 427, 431, 76 L ed 861, 865,
> 52 S Ct 417.   See Potter v United States, 155 US 438, 445,
> 39 L ed 214, 217, 15 S Ct 144; Bartell v United States, 227
> US 427, 431, 57 L ed 583, 585, 33 S Ct 383; Berger v
> United States, 295 US 78, 82, 79 L ed 1314, 1318, 55 S Ct
> 629; United States v Debrow, 346 US 372, 377, 378, 98 L
> ed 92, 97, 74 S Ct 113.

*Russell v. United States*, 369 U.S. 749, 763-64 (1962).


Count 1 of the indictment properly charges an alleged violation of Title 21 U.S.C. § 846 by expressly stating that the defendant "did knowingly, willfully and unlawfully combine, conspire and agree with others known and unknown to the grand jury, to . . . distribute and dispense, and to cause to be distributed and dispensed controlled substances, other than for a legitimate medical purpose and not in the usual course of professional practice . . . in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(C), 841(b)(1)(E), 841(b)(2) and 841(b)(3)."   Dkt. #66, pp. 11-12, ¶ 33.   Paragraph 35, subparagraphs (a) through (u) describe in detail the means and methods employed by the defendant and others in carrying out the alleged conspiracy. Dkt. #66, pp. 13-19.   Paragraph 33 of the indictment expressly states that the alleged conspiracy occurred during the period "from in or about June 2006 through on or about April 27, 2017, in the Western District of New York and elsewhere . . .".   Dkt. #66, p. 11.


The United States Supreme Court has expressly ruled that doctors, as registered physicians, "can be prosecuted for violating Title 21, United States Code,

Section 841 when their activities fall outside the usual course of professional practice."

*United States v. Moore*, 423 U.S. 122, 124 (1975).   The defendant's assertion that

Counts 1 through 148 fail to meet or "satisfy the standard which the indictment must

encompass" is rejected."   As the United States Supreme Court has stated:

> The canon in favor of strict construction (of criminal statutes)
> is not an inexorable command to override common sense
> and evident statutory purpose. . . .   Nor does it demand that
> a statute be given the 'narrowest meaning'; it is satisfied if
> the words are given their fair meaning in accord with the
> manifest intent of the lawmakers.

*United States v. Brown*, 333 U.S. 18, 25-26 (1948); *United States v. Moore, supra* at

145.

The legislative history of the Controlled Substances Act ("CSA") "indicates

that Congress was concerned with the nature of the drug transaction, rather than with

the status of the defendant."   *United States v. Moore, supra* at 134.   The defendant is

charged with distributing and dispensing controlled substances "other than for a

legitimate medical purpose and not in the usual course of professional practice . . . in

violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), 841(b)(1)(E), 841(b)(2) and

841(b)(3)."   This charge as set forth in the indictment contains the elements of the

offense charged and fairly informs the defendant of the charges against him and the

time period when the alleged violation took place thereby enabling the defendant to

claim double jeopardy in the event of a future prosecution for the same offense.   As a

result, the defendant's demand for dismissal must be denied.   *Hamling v. United*

*States*, 418 U.S. 87, 117 (1974); *Russell v. United States, supra*; *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir.), *cert. denied*, 504 U.S. 926 (1992).

The defendant's argument that Count 1 of the indictment "suggests that it is a crime for the doctor to knowingly and intentionally prescribe the medication" (Dkt. #83, ¶ 64) is a serious one as is his claim that the charge fails to assert that it was the defendant's intent "to distribute [the controlled substances] outside the course of professional practice" since the "indictment does not set out the appropriate standard of care necessary to prescribe the medication."   Because the Court of Appeals for the Second Circuit has addressed the substance of the defendant's assertions, I have deliberately sacrificed brevity by setting forth the Court's reasoning.

> The exemption granted to medical practitioners engaged in distribution of controlled substances is a limited one. Because they have been licensed as practitioners and registered under the CSA, they enjoy a privilege not extended to the layman. That privilege, based on the assumption that practitioners, by reason of their expertise and training, will be guided by generally accepted professional practice, carries with it greater responsibilities than those chargeable to the unlicensed person. These added responsibilities are essential to protect the public against abuse by "registrants, who have the greatest access to controlled substances and therefore the greatest opportunity for diversion", Moore, supra, 423 U.S. at 135, 96 S.Ct. at 342.3
>
> In view of the special responsibilities assumed by a practitioner registered under the CSA we believe that, although not mandated, an instruction that the jury should use an objective standard of reasonableness in deciding whether a practitioner acted in accord with what he believed to be proper medical practice is not improper and does not

amount to error. Indeed it is difficult to conceive of a situation, in such a carefully regulated field, in which a registered practitioner would have an "unreasonable" good faith belief that his distribution was for a legitimate medical purpose and in accord with the usual course of generally accepted medical practice. The suggestion that an objective reasonableness standard exposes a physician to criminal responsibility for nothing more than the equivalent of malpractice ignores the fact that in a criminal prosecution the physician may be found guilty only upon proof beyond a reasonable doubt that he acted outside the scope of medical practice, as distinguished from the lesser burden assumed in a civil malpractice suit.

To permit a practitioner to substitute his or her views of what is good medical practice for standards generally recognized and accepted in the United States would be to weaken the enforcement of our drug laws in a critical area. As the Supreme Court noted in Moore, "Congress intended the CSA to strengthen rather than to weaken the prior drug laws". 423 U.S. at 139, 96 S.Ct. at 343. Faced with a situation similar to that presented here, the Fifth Circuit approved an objective standard for determining what constitutes accepted medical practice, stating, "[o]ne person's treatment methods do not alone constitute a medical practice." United States v. Norris, supra, 780 F.2d at 1209. The Sixth Circuit has likewise followed an objective "reasonableness" standard, approving an instruction to the effect that a physician's good faith dispensation of a controlled substance in the usual course of his professional practice "connotes an observance of conduct in accordance with what the physician should reasonably believe to be proper medical practice." United States v. Voorhies, 663 F.2d 30, 33-34 (6th Cir.1981).

*United States v. Vamos*, 797 F.2d 1146, 1152-1153 (2d Cir. 1986), *cert. denied* 479

U.S. 1036 (1987).

In order to convict the defendant of a crime, to wit, violation of 21 U.S.C.

§§ 841 and 846 as charged in the indictment herein, the government must prove

beyond a reasonable doubt that the defendant "caused the drugs to be dispensed other than for a legitimate medical purpose, other than in good faith, and not in the usual course of medical practice."   *United States v. Wexler*, 522 F.3d 194, 206 (2d Cir. 2008); *see also United States v. Moore, supra* at 124; *United States v. Leonard*, 738 Fed. Appx. 7 (2d Cir. 2018); *United States v. Maye*, 649 Fed. Appx. 15 (W.D.N.Y. 2016).   Stated another way, "[i]t is only when a physician acts outside the proper realm of medical practice to distribute controlled substances that he acts as a 'drug pusher' rather than as a medical professional."   *Vamos, supra* at 1152 (quoting *Moore*, 423 U.S. at 138); *United States v. Wexler, supra* at 206.   The term "medical" or "professional practice" "refers to generally accepted medical practice; a practitioner is not free deliberately to disregard prevailing standards of treatment.   In short, the doctor must act in the good faith belief that his distribution of the controlled substance is for a legitimate medical purpose and in accordance with the usual course of generally accepted medical practice.   *Vamos, supra* at 1151 (citations omitted).

The defendant's argument that "21 U.S.C. § 841(b)'s 'resulting in death' language as charged in Counts 2-4 of the indictment, is unconstitutional" because it does not require "any *mens rea*" and "is unconstitutional as applied to Dr. Gosy" attempts to create an improper requirement for the statute by equating "*mens rea*" with a guilty mind.   Section 841(b) sets forth certain sentencing provisions based on a proven violation of Section 841(a)(1) which expressly states that:

It shall be unlawful for any person knowingly or intentionally –

(1)    To manufacture, distribute, or dispense, or possess with intent to manufacture, distribute or dispense, a controlled substance.

The government must not only prove beyond a reasonable doubt that the defendant knowingly or intentionally committed the act of distribution in violation of Section 841(a)(1), it must also prove beyond a reasonable doubt that the substance that the defendant dispensed or distributed in violation of Section 841(a)(1) caused the death of the individuals referenced in Counts 2, 3 and 4 of the superseding indictment. *Burrage v. United States*, 571 U.S. 204, 210 (2014).   As a result, the defendant's argument is without legal merit and is rejected in its totality.

### B.  The Defendant's Claim of Duplicity/Multiplicity of Counts in the Indictment

The defendant "moves to dismiss the indictment on the basis that many of the counts are either duplicitous or multiplicitous and, therefore cause prejudice to the defense."   Dkt. #83, ¶ 185; Dkt. #98, pp. 7-8.

### 1.    The Multiplicity Issue

An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed. *See United States v. Holmes*, 44 F.3d 1150, 1153-54 (2d Cir. 1995); *see also United States v. Nash*, 115 F.3d 1431, 1437 (9th Cir. 1997).   This violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once.   *See U.S.*

> *Const. Amend. V.; United States v. Dixon*, 509 U.S. 688,
> 696, 113 S. Ct. 2849, 125 L. Ed.2d 556 (1993) ("In both the
> multiple punishment and multiple prosecution contexts, this
> court has concluded that where two offenses for which the
> defendant is punished or tried cannot survive the "same
> elements" test, the double jeopardy bar applies."); *see also*
> *United States v. Morgan*, 51 F.3d 1105, 1108 (2d Cir. 1995)
> ('If a person is twice subject to punishment for the same
> offense, double jeopardy attaches.")

*United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).

The United States Supreme Court enunciated the rule or test to be

applied in making a determination of whether an indictment contains multiplicitous

counts as follows:

> The applicable rule is that, where the same act or
> transaction constitutes a violation of two distinct statutory
> provisions, the test to be applied to determine whether there
> are two offenses or only one is whether each provision
> requires proof of an additional fact which the other does not.
>   *Gavieres v. United States*, 220 U.S. 338, 342, 31 S. Ct.
> 421, 55 L. Ed. 489, and authorities cited.   In that case this
> court quoted from and adopted the language of the
> Supreme Court of Massachusetts in *Morey v.*
> *Commonwealth*, 108 Mass. 433: "A single act may be an
> offense against two statutes; and if each statute requires
> proof of an additional fact which the other does not, an
> acquittal or conviction under either statute does not exempt
> the defendant from prosecution and punishment under the
> other."

*Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The Court of Appeals for the Second Circuit has reiterated this rule or test

in *United States v. Chacko, supra* at 146 wherein it stated:

> In assessing whether a defendant is impermissibly charged

with essentially the same offense more than once in
violation of the Double Jeopardy Clause of the Constitution,
the touchstone is whether Congress intended to authorize
separate punishments for the offensive conduct under
separate statutes.   *See Holmes*, 44 F.3d at 1154.   It is not
determinative whether the same conduct underlies the
counts; rather, it is critical whether the "**offense**" -- in the
legal sense, as defined by Congress -- complained of in one
count **is the same as that charged in another**.

To assess whether the two offenses charged separately in
the indictment are really one offense charged twice, the
"same elements" test or the "*Blockburger*" test is applied.
The *Blockburger* test examines whether each charged
offense contains an element not contained in the other
charged offense.   *See Dixon*, 509 U.S. at 696, 113 S. Ct.
2849.   If there is an element in each offense that is not
contained in the other, they are not the same offense for the
purposes of double jeopardy, and they can both be
prosecuted.

(citations omitted) (emphasis added); *see also United States v. Hadakas*, 286 F.3d 92

(2d Cir.), cert. Denied 537 U.S. 894 (2002).

In support of his claim that the superseding indictment is "multiplicitous,"

the defendant argues that "because all of the counts [in Counts 1, 149 through 166]

require proof of precisely the same set of facts, the indictment is clearly multiplicitous."

Dkt. #98, pp. 7-8.   This claim is clearly erroneous.

Count 1 of the superseding indictment charges the defendant with a

conspiracy to violate Title 21 U.S.C. § 846 by "agree[ing] with others, known and

unknown to the grand jury . . . to distribute and dispense, and to cause to be distributed

or dispensed, and to cause to be distributed and dispensed controlled substances,

other than for a legitimate medical purpose and not in the usual course of professional

practice, . . . in violation of Title 21, United States Code, Sections 841(a)(1),

841(b)(1)(C), 841(b)(1)(E), 841(b)(2) and 841(b)(3)." Dkt. #66, pp. 11-12.

Count 149 of the superseding indictment charges the defendant with a
conspiracy to commit health care fraud in violation of Title 18 U.S.C. § 1347 by
"agree[ing] with others known and unknown to the grand jury, to knowingly and willfully
execute a scheme and artifice to defraud Health Care Benefit Programs as defined in
Title 18, United States Code, Section 24(b), and to obtain, by means of materially false
and fraudulent pretenses, representations and promises, money owned by and under
the custody and control of such health care benefit programs, in connection with the
delivery of and payment for health care benefits, items, and services," all in violation of
18 U.S.C. §1349.   Dkt. #66, pp. 27-28.

Count 150 of the superseding indictment charges the defendant with a
conspiracy to commit health care fraud in violation of Title 18 U.S.C. Section 1347 by
"knowingly, willfully, and unlawfully combin[ing], conspir[ing] and agree[ing] with others,
known and unknown to the grand jury, to knowingly and willfully execute a scheme and
artifice to defraud insurance companies who paid New York State Workers'
Compensation claims, including the New York State Insurance Fund, health care
benefit programs as defined in Title 18, United States Code, Section 24(b) and to
obtain, by means of materially false and fraudulent pretenses, representations and
promises, money owned by and under the custody and control of these health care

benefit programs in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347," all in violation of 18 U.S.C. Section 1349.   Dkt. #66, pp. 32-33.   The alleged conspiracy period was "on a date unknown, but no later than in or about September 2010, through in or about December 2015."   Dkt. #66, p. 32.

Counts 151 to 166 of the superseding indictment are substantive counts wherein the defendant is charged with having submitted false claims to the New York State Insurance Fund during the period between October 2011 and in or about September 2014 in violation of 18 U.S.C. Section 1347.   Dkt. #66, pp. 35-37.

The United States Supreme Court has expressly held that "the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both." *Pinkerton v. United States*, 328 U.S. 640, 643-644 (1946); *Pereira v. United States*, 347 U.S. 1, 11 (1954).   The essence of the conspiracy charges set forth in Counts 1, 149 and 150 of the superseding indictment is an agreement by the defendant and others to carry out a scheme to unlawfully distribute controlled substances and to defraud others.  The substantive counts set forth in Counts 151 through 166 do not require proof of an agreement since they allege acts that the defendant carried out as a principal actor. The conspiracy charges in Counts 149 and 150 require proof that is not essential to proving the substantive charges in Counts 151 through 166.   *See Pereira, Id.*   As a result, Counts 151 through 166 are not multiplicitous in conjunction with Counts 1, 149

and 150.

Counts 151 through 166 allege separate acts by the defendant as being fraudulent in violation of 18 U.S.C. § 1347 which states:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program

The language set forth in 18 U.S.C. § 1347 makes clear that the crime is the execution of a fraudulent scheme or the attempt to execute a fraudulent scheme. Counts 151 through 166 set forth sixteen separate acts by the defendant, to wit, the separate submission of false claim forms on various dates during the period October 2012 through May 2014.   Dkt. #66, pp. 35-37.   The Second Circuit Court of Appeals has held that "in determining whether acts constitute separate executions of a scheme," it must be determined "whether the acts were chronologically and substantively independent from the overall scheme."   *United States v. Harris*, 79 F.3d 223, 232 (2d Cir. 1996), citing *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995), *cert. denied*, 516 U.S. 1076 (1996); *United States v. Well*, 37 F.3d 1443, 1447 (10th Cir. 1994).

Each submission of an alleged false health care claim by the defendant to the New York State Insurance Fund on various dates during the period of October 2012 through May 2014 seeking payment of money constitutes a "separate execution of a scheme to defraud" and therefore, Counts 151 through 166 of the superseding indictment are not multiplicitous.    *See Harris, supra.*

### 2.    The Duplicitous Issue

The defendant asserts that the indictment herein should be dismissed "on the basis that many of the counts are … duplicitous and therefore, cause prejudice to the defense."    Dkt. #83, p. 73, ¶ 185; Dkt. # 98, pp. 7-8.    The defendant further argues that because the superseding indictment incorporates by reference Counts 1 and 150 "into Counts 149 through 166" and "realleged as if fully set forth herein" in Counts 151 through 166, the defendant is being charged with "two or more distinct crimes into one count in violation of Rule 8(a) [F.R. Crim. P.] and is therefore" prejudiced thereby because a duplicitous indictment creates prejudice which requires that the indictment be dismissed.    Dkt. #98, p. 7.

In response, the government represents that the "proof as to virtually all of the allegations set forth in Count 1 of the indictment is relevant to the jury's consideration of Count 149 of the indictment, and therefore much, if not all, of the evidence the government intends to use to prove these offenses (including testimonial and documentary evidence) is essentially the same."    Dkt. #89, p. 4.    The government

further states that "proof as to certain aspects of the conspiracies alleged in Counts 1 and 149 of the indictment will also be offered as direct proof as to Counts 150-166 of the indictment, and therefore much of the evidence the government intends to use to prove these offenses (including testimonial and documentary evidence) is the same." Dkt. #89, p. 4.

The government also asserts that "the allegations of Count 1 are properly set forth and re-alleged and incorporated into Counts 149-166 of the indictment, as they are relevant to those Counts and, among other allegations and facts, provide descriptions of the relevant background of the defendant's medical practice, his role in the practice, the role of various employees in the practice, pertinent policies and procedures of the defendant's medical practice, prescribing practices, and pertinent New York State and federal law and regulations" and therefore, "the restating of Count 1 in reference to other Counts does not render those Counts duplicitous."   Dkt. #96, p. 5.

> An indictment is duplicitous if it joins two or more distinct crimes in a single count. *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980).   A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from "the allegation in a single count of the commission of a crime by several means."   *Id.*   The latter is not duplicitous.   The policy considerations underlying the prohibition against duplicitous indictments are varied.   As we previously have stated, these considerations include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing

the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution. *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (citing *Murray*, 618 F.2d at 896).

A conspiracy indictment presents "unique issues" in the duplicity analysis because "a single agreement may encompass multiple illegal objects." *Murray*, 618 F.2d at 896. In this Circuit "it is well established that '[t]he allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for "[t]he conspiracy is the crime and that is one, however diverse its objects."'" *Id.* (citations omitted); *see also Braverman v. United States*, 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942) ("Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.").

We have declined to accept the law of the Fifth Circuit "that any acts capable of being charged as separate offenses must be alleged in separate counts." *Margiotta*, 646 F.2d at 733 (citing *Bins v. United States*, 331 F.2d 390, 393 (5th Cir.), *cert. denied*, 379 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964)). Instead, under the law of this Circuit, "acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme." *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989) (citation omitted), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d.

*United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992).

The Court of Appeals for the Second Circuit expressly held that:

If, in carrying out the conspiracy, the appellants committed another offense against the laws of the United States, the recitation of that offense does not make the indictment void

> for duplicity, nor does it affect the charged conspiracy in the
> indictment.

*U.S. v. Illinois Alcohol Co.*, 45 F.2d 145, 148 (2d Cir. 1930), *cert. denied by Berney v.*

*U.S.,* 282 U.S. 901 (1931).

It stands to reason that if the conspiracy count in an indictment may

contain "recitation" of other offenses, the substantive counts in the indictment may

legally recite the conspiracy counts of the indictment by incorporation by reference as a

means of describing how the defendant performed the acts constituting the alleged

substantive violations.

In the case at bar, the defendant is charged with sixteen (16) substantive

counts of health care fraud in violation of Title 18 U.S.C. § 1347 (Dkt. #66, Counts

151-166).   The incorporation of Count 1, "Conspiracy to Distribute Controlled

Substances" and Count 150, "Conspiracy to Commit Health Care Fraud" is done merely

for the purpose of describing the means by which the defendant violated Title 18 U.S.C.

§ 1347 and not for the purpose of charging the defendant a second time with those

conspiracies.   Counts 151-166 of the indictment clearly conclude and so advise the

defendant that in these counts, the grand jury has charged him with violating only Title

18 U.S.C. §1347.   As a result, the charges are not duplicitous.   It is also pointed out

that dismissal of a duplicitous indictment before trial is not an appropriate remedy.

Rather, if the indictment were considered duplicitous, the appropriate remedy is

reformulation.   *See United States v. Droms*, 566 F.2d 361, 363, n. 1 (2d Cir. 1977);

*United States v. Duncan*, 850 F.2d. 1104, 1108, n. 4 (6th Cir. 1988).   As further

precaution, the trial court can address the issue of prejudice through a curative jury

instruction.   *United States v. Helmsley*, 941 F.2d 71, 91 (2d Cir. 1991), *cert. denied* 502

U.S. 1091 (1992).


### 3.    Defendant's Request to Strike "Unnecessary Surplusage"

The defendant seeks an order from the Court striking the language that

"repeats, realleges and incorporates by reference previous paragraphs that are

irrelevant and prejudicial to the defense," claiming that such language is surplusage in

the indictment.   Dkt. #83, pp. 23-24, ¶ 73.


Rule 7(c)(1) of the Fed. R. Crim. P. expressly states that "a count may

incorporate by reference an allegation made in another count" in the indictment.   The

incorporated references which the defendant seeks to have stricken from the indictment

generally describe the means and/or methods utilized by the defendant in carrying out

the acts for which he is charged in the different counts of the indictment.   "Motions to

strike surplusage from an indictment will be granted only where the challenged

allegations are not relevant to the crime charged and are inflammatory and prejudicial."

*United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990); *United States v. Mulder*,

273 F.3d 91, 99 (2d Cir. 2001).   The incorporated allegations in the indictment do

relate to the counts into which they are incorporated in that they are descriptive of the

means by which the defendant allegedly carried out his illegal acts charged.   Also,

such allegations are not inflammatory nor prejudicial to the defendant as claimed by the defendant in his motion to strike.

### C.  Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrants

1.    The "Standing" Issue

The defendant attacks the validity of the search warrants issued authorizing the search of the defendant's medical office located at 100 College Parkway, Suite 200, Williamsville, New York and the search of computers belonging to Medent Environment located at 15 Hulbert Street, Auburn, New York.   The Medent computers were apparently utilized by the defendant as "online backup storage of his office and patient records."   Dkt. #83, pp. 61-71, ¶s 147-183.

The government asserts that the defendant lacks standing to assert a Fourth Amendment violation as to the searches conducted pursuant to these warrants. Dkt. #88, pp. 43-45; Dkt. #103, pp. 1-6.

In United States v. Burger, 482 U.S. 691,699,(1987), the Supreme Court expressly stated:

> The Court long has recognized that the Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises, as well as to private homes. See v. City of Seattle, 387 U.S. 541, 543, 546, 87

S.Ct. 1737, 1739, 1741, 18 L.Ed.2d 943 (1967). An owner or operator of a business thus has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable, see Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring). This expectation exists not only with respect to traditional police searches conducted for the gathering of criminal evidence but also with respect to administrative inspections designed to enforce regulatory statutes. See Marshall v. Barlow's, Inc., 436 U.S. 307, 312-313, 98 S.Ct. 1816, 1820-1821, 56 L.Ed.2d 305 (1978).

Similarly, the Court has held that in some circumstances a worker can claim Fourth

Amendment protection over his own workplace. See, e.g., O'Connor v. Ortega, 480

U.S. 709. (1987). Minnesota v. Carter, 525 U.S. 83, 90 (1998); *Burger, supra.*

I find that the defendant had, and has, a reasonable and legitimate

expectation of privacy in the medical records of his patients as well as his office records

that were generated as part of his medical office practice as well as in the storage of

those records on his office computers and the backup computers belonging to Medent

Environment.   As a result, the defendant has a Fourth Amendment right to contest the

validity of the search warrants that were utilized to seize those records.

2.    Defendant's Claim that Probable Cause was Lacking for the
Issuance of the Search Warrants

The defendant's counsel asserts that "most of the allegations contained in

the application[s] [for the search warrants] were conjecture and surmise which did not

provide the court with probable cause to believe that Dr. Gosy had committed a crime

and that evidence of the crimes could be found upon the search and seizure taking

place at Dr. Gosy's office and at the office of Medent in Auburn, New York."   Dkt. #83, p. 66, ¶ 158.   For the reasons that follow, this argument is rejected.

The affidavits of S.A. Budz, upon which the search warrants are based, consist of seventy (70) descriptive paragraphs of his interviews of various employees of the defendant who described in detail the various practice procedures that were utilized in the defendant's medical practice for issuing prescriptions, bills to insurance companies and patient notekeeping.   These descriptive paragraphs, taken in their totality, more than suffice to provide probable cause that violations of Title 18 U.S.C. § 1035 and 1347 and Title 21 U.S.C. § 841(a)(1) had been committed.

"In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the 'totality of circumstances' bearing upon its reliability."[1]   *United States v. Smith*, 9 F.3d 1007 (2d Cir. 1993), *citing Illinois v. Gates*, 462 U.S. 213, 230-31 (1984) *and Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).   "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or

---

[1]  The employees interviewed by S.A. Budz are referred to as W1 through W5 but are further described by their job functions in the defendant's medical office

evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.   "A

magistrate's determination of probable cause should be paid great deference by

reviewing courts."   *Smith*, 9 F.3d at 1012.   Thus, the duty of a reviewing court is simply

to ensure that the magistrate had a substantial basis for concluding that probable cause

existed.   *Gates*, 462 U.S. at 238-39.

> As the Court of Appeals for the Second Circuit stated:
>
> [One] who argues that a warrant was issued on less than probable cause faces a heavy burden.   "Where [the] circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . .   [T]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).   In particular, where the officer requesting the search warrant relies on an informant, the magistrate's role is to examine the totality of the circumstances and to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.   And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.
> *Illinois v. Gates,* 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)); *see United States v. Feliz-Cordero*, 859 F.2d 250, 252-53 (2d Cir. 1988).

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991).

The defendant has failed in meeting his burden to establish that probable cause was lacking for the issuance of the search warrants in question. All that has been provided is the conclusory assertion of defense counsel that S.A. Budz's affidavit consisted of "conjecture and surmise which did not provide the court with probable cause to believe that Dr. Gosy had committed a crime and that evidence of the crimes could be found upon the search and seizure taking place at Dr. Gosy's office and at the office of Medent in Auburn, N.Y." Dkt. #83, p. 66, ¶ 158.

S.A. Budz's applications for the search warrants were "clearly supported by much more than a 'bare bones' affidavit." His affidavits clearly described his extensive investigation and interviews of employees and former employees of the defendant which provided sufficient evidence for a finding of probable cause in his mind. As a result, his reliance on the magistrate judge's determination of probable cause was objectively reasonable and done in good faith. Therefore, suppression of the evidence seized pursuant to the search warrants is unwarranted. *United States v. Leon*, 468 U.S. 897 (1984).

3.   Defendant's Claim that the Search Warrants "Lacked Particularization." Dkt. #83, pp. 66-67; Dkt. #98, p. 6

The defendant argues that "there was no limit to what Agent Budz requested to be seized and, he provided no protocol as to how he was going to seize any of those items. In other words, Agent Budz requested a search for everything

contained in the Gosy offices as well as within the computer systems."   Dkt. #83, p. 67,

¶ 165.   "There were no search protocols and there was no limit to what the agents

could seize."   Dkt. #98, p. 6.   This argument of the defendant is also rejected.


In addressing the "particularity" requirement for search warrants, the

United States Supreme Court has acknowledged that this requirement can be satisfied

by cross referencing other documents and incorporating those documents into the

search warrant by "us[ing] appropriate words of incorporation."   *Groh v. Ramirez*, 540

U.S. 551, 557-558 (2004); *United States v. Water*, 463 F. Supp.2d 348, 362 (W.D.N.Y.

2006).


Both search warrants in this case specifically incorporated references to

the documents describing the items to be seized.   The "appropriate words of

incorporation" for each warrant were, "Attachment B" for the search warrant for the

search of 100 College Parkway, Suite 220, Williamsville, New York and "Attachment

B1" for the search warrant for the search of the Medent Environment warrant.   *See*

14-M-1071 and 14-M-1072.


Each attachment, *i.e.*, B and B1, was physically attached to each

appropriate search warrant.   Both attachments expressly state that the items to be

seized are those "that pertain to violations of Title 18, United States Code, Sections

1347 and 1035, and Title 21, United States Code, Section 841(a)(1), dating from

September 12, 2004 to the present."   Both attachments, B and B1, also set forth

sufficient examples of the type of records to be seized.   The specific reference to the

statues that are the subject of the investigation operates as a limitation on what the

agents can search for and what can be seized in that context.   This limitation provided

sufficient "particularity" in the search warrants so as to meet Fourth Amendment

requirements.   *See United States v. Ulbricht*, 858 F.3d 71, 101 (2d Cir. 2017), *cert.*

*denied* 138 S.Ct. 2708 (2018); *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992);

*United States v. Young*, 745 F.2d 733, 758 (2d Cir. 1984), *cert. denied* 470 U.S. 1084

(1985); *United States v. Dunloy*, 584 F.2d 6, 8 (2d Cir. 1978).

> When the criminal activity pervades an entire business,
> seizure of all records of the business is appropriate, and
> broad language used in warrants will not offend the
> particularity requirement.

*U.S. Postal Service v. C.E.C. Servs*, 869 F.2d 184, 187 (2d Cir. 1989); *National City*
*Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir. 1980).

    4.    Defendant's Claim that the Search Warrants Were "Overbroad"

        The defendant argues that both search warrants are invalid because they

were overlay broad and allowed Agent Budz to "search for everything in the Gosy

offices as well as within the computer systems."   Dkt. #83, p. 67, ¶ 165; Dkt. #98, p. 6.

        This argument is rejected.   Admittedly, modern technology being what it

is, computer searches present legitimate concerns.   As the Court of Appeals for the

Second Circuit has stated:

> As the Ninth Circuit has explained, because there is
> currently no way to ascertain the content of a file without
> opening it and because files containing evidence of a crime
> may be intermingled with millions of innocuous files, "[b]y
> necessity, government efforts to locate particular files will
> require examining a great many other files to exclude the
> possibility that the sought-after data are concealed there."
> United States v. Comprehensive Drug Testing, Inc., 621
> F.3d 1162, 1176 (9th Cir.2010) (en banc) (per curiam). Once
> the government has obtained authorization to search the
> hard drive, the government may claim that the contents of
> every file it chose to open were in plain view and, therefore,
> admissible even if they implicate the defendant in a crime
> not contemplated by the warrant. There is, thus, "a serious
> risk that every warrant for electronic information will become,
> in effect, a general warrant, rendering the Fourth
> Amendment irrelevant." Id. This threat demands a
> heightened sensitivity to the particularity requirement in the
> context of digital searches.

*United States v. Galpin*, 720 F.3d 436 (2d Cir. 2013); *United States v.*

*Ulbricht*, 858 F.3d 71 (2d Cir. 2017).

    Notwithstanding this "serious risk," the Second Circuit has

expressly held that:

> [I]t will often be impossible to identify in advance the words
> or phrases that will separate relevant files or documents
> before the search takes place, because officers cannot
> readily anticipate how a suspect will store information related
> to the charged crimes. Files and documents can easily be
> given misleading or coded names, and words that might be
> expected to occur in pertinent documents can be encrypted;
> even very simple codes can defeat a pre-planned word
> search.

*United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017); abrogated on

other grounds, *United States v. Zodhjates*, 901 F.3d 137 (2d Cir. 2018).

The descriptive or illustrative list of things to be searched for and seized in attachments B and B1 to the warrants sufficiently limit what is to be seized by the agents in conducting their search and, therefore, the search warrants are not overly broad as claimed by the defendant.

> In upholding broadly worded categories of items available for seizure, we have noted that the language of a warrant is to be construed in light of an illustrative list of seizable items. *See United States v. Young*, 745 F.2d 733, 759-60 (2d Cir. 1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *see also Andresen v. Maryland*, 427 U.S. at 480-81, 96 S.Ct. at 2748-49.   In the pending case, the warrant supplied sufficient examples of the type of records that could be seized – bank records, business records, and safety deposit box records.   No doubt the description, even with illustrations, did not eliminate all discretion of the officers executing the warrant, as might have occurred, for example, if the warrant authorized seizure of the records of defendant's account at a named bank. But the particularity requirement is not so exacting.   Once a category of seizable papers has been adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment as to whether a particular document falls within the described category.
>
> It is true that a warrant authorizing seizure of records of criminal activity permits officers to examine many papers in a suspect's possession to determine if they are within the described category.   But allowing some latitude in this regard simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked "drug records."

*United States v. Riley*, 906 F.2d 841,845-846 (2d Cir. 1990); *see also Andresen v. Maryland*, 427 U.S. 463, 482 (1976).

     5.   Defendant's Claim that the Search Warrants are Invalid Because They Did Not Contain a Protocol to be Used in Conducting the Search of the Computers.   Dkt. #83, p. 67, ¶ 165

This argument is rejected as being without legal merit.   The United States Supreme Court has expressly held that "[i]t is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant – subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures'."   *Dalia v. United States*, 441 U.S. 238, 257 (1979).

     6.   Defendant's Claim of Deficiency in the Warrant Application

Counsel for the defendant asserts that "Witness 1" ("W1") referenced in S.A. Budz's affidavits in support of the search warrant applications as being the "office manager for Dr. Gosy," had been terminated from Dr. Gosy's practice prior to the time that the search warrant[s] was issued and executed" and that the "omission of that important factor was intentional and certainly implicates the appropriateness of the issuance of the search warrant itself."   Dkt. #83, p. 64, ¶ 151.   In response, the government "concedes this information should have been in the affidavit" but argues that "the defense has not made a substantial preliminary showing that it was intentionally omitted or omitted in reckless disregard of the truth."   Further, it is

asserted that "in light of all of the other information in the affidavit, including information provided by numerous former employees establishing Gosy's [illegal] practice [methods], there is no indication that the inclusion of this information would have negated probable cause for the issuance of the warrants."   Dkt. #88, pp. 56-57.

Ordinarily, a search or seizure pursuant to a warrant is presumed valid. In certain circumstances, however, a defendant may challenge the truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the warrant and the resulting search or seizure. See Franks v. Delaware, 438 U.S. 154, 164–72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); United States v. Canfield, 212 F.3d 713, 717 (2d Cir.2000). However, "[e]very statement in a warrant affidavit does not have to be true." United States v. Trzaska, 111 F.3d 1019, 1027 (2d Cir.1997). When faced with an issue of inclusion of false information and/or omission of information in an affidavit submitted in support of a search warrant application, the Court of Appeals has laid out a procedure to be utilized in making a determination as to the validity of the search warrant in question as follows.

> To suppress evidence obtained pursuant to an affidavit containing erroneous information, the defendant must show that: "(1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the [issuing] judge's probable cause finding." United States v. Salameh, 152 F.3d 88, 113 (2d Cir.1998); see Trzaska, 111 F.3d at 1027-28 (applying standard after district court conducted Franks hearing).
>
> To determine if the false information was necessary to the issuing judge's probable cause determination, i.e., material,

> "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant." Id. If the corrected affidavit supports probable cause, the inaccuracies were not material to the probable cause determination and suppression is inappropriate. As with the inclusion of false information, "[o]missions from an affidavit that are claimed to be material are governed by the same rules." United States v. Ferguson, 758 F.2d 843, 848 (2d Cir.1985). The ultimate inquiry is whether, after putting aside erroneous information and material omissions, "there remains a residue of independent and lawful information sufficient to support probable cause." Id. at 849.

*United States v. Canfield,* 212 F.3d 713, 717-718 (2d Cir. 2000).

I find that the inclusion of the fact that W1 was terminated in his/her employment by Dr. Gosy prior to the issuance of the search warrants and their execution would in no way "materially" affect or negate the findings of probable cause for the issuance of the search warrants.   As previously stated, the seventy (70) descriptive paragraphs of other Gosy employee interviews more than sufficiently establish probable cause for the issuance of the warrants and the termination of W1 in his/her employment with Dr. Gosy in no way diminishes that finding.

7.   Defendant's Request for a *Franks* Hearing

Because the government "conceded" that the termination of W1, the office manager, by Dr. Gosy should have been included in the affidavits of S.A. Budz, the defendant argues that this information "was a matter essential to the propriety of the

search warrants" and therefore a *Franks* hearing on the issue should be held.    Dkt.

#98, p. 6.


In *Franks v. Delaware*, the United States Supreme Court set forth the

following standards for challenging an affidavit supporting a search warrant:


> To mandate an evidentiary hearing, the challenger's attack
> must be more than conclusory and must be supported by
> more than a mere desire to cross-examine.    There must be
> allegations of deliberate falsehood or of reckless disregard
> for the truth, and those allegations must be accompanied by
> an offer of proof.    They should point out specifically the
> portion of the warrant affidavit that is claimed to be false;
> and they should be accompanied by a statement of
> supporting reasons.    Affidavits or sworn or otherwise
> reliable statements of witnesses should be furnished, or their
> absence satisfactorily explained.    Allegations of negligence
> or innocent mistake are insufficient. . . .    Finally, if these
> requirements are met, and if, when material that is the
> subject of the alleged falsity or reckless disregard is set to
> one side, there remains sufficient content in the warrant
> affidavit to support a finding of probable cause, no hearing is
> required.

438 U.S. 154, 171-72 (1978) (footnote omitted).


Material omissions from an affidavit are governed by the same rules as

false statements. *United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989), *cert.*

*denied*, 498 U.S. 866 (1990); *United States v. Ferguson*, 758 F.2d 843, 848 (2d Cir.),

*cert. denied*, 474 U.S. 1032 (1985).    Accordingly, "[i]f, after setting aside the allegedly

misleading statements or omissions, the affidavit, nonetheless, presents sufficient

information to support a finding of probable cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998), *cert. denied sub nom. Abouhalima v. United States*, 525 U.S. 1112 (1999); *United States v. Canfield,* 212 F.3d 713, 717-718 (2d Cir. 2000).

Since inclusion of the omitted facts in S.A. Budz's affidavits would not have dissipated or negated the finding of probable cause for the search warrants, as found above, there is no need to hold a *Franks* hearing and therefore defendant's request for one should be denied.

## **CONCLUSION**

Based on the foregoing, it is hereby recommended that defendant's motions to (1) dismiss the superseding indictment; (2) "strike unnecessary surplusage contained in the indictment; (3) suppress the evidence seized pursuant to search warrants; and (4) hold a *Franks* hearing, be in all respects denied.

It is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.   *See, e.g., Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**   *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report,**

**Recommendation and Order), may result in the District Judge's refusal to**

**consider the objection.**


DATED:     Buffalo, New York
           December 13, 2018

                          ***S/ H. Kenneth Schroeder, Jr.***
                          **H. KENNETH SCHROEDER, JR.**
                          **United States Magistrate Judge**