UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                            Plaintiff,

Case # 16-CR-46

v.

**DECISION AND ORDER**

EUGENE GOSY,

                            Defendant.

## INTRODUCTION

Defendant Eugene Gosy, a medical doctor specializing in neurology and pain management, was charged in a 166-Count Superseding Indictment with offenses related to the unlawful distribution of controlled substances (Counts 1-148) and health care fraud (Counts 149-166). ECF No. 66. Dr. Gosy moves to dismiss all counts of the indictment and to suppress evidence obtained pursuant to search warrants for his office and his practice's computer system. ECF No. 83.

Magistrate Judge H. Kenneth Schroeder, Jr., issued a Report and Recommendation ("R&R") recommending that both motions be denied. ECF No. 111. Dr. Gosy filed objections, ECF No. 112, the Government responded, ECT No. 115, and Dr. Gosy replied, ECF No. 123. Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court has conducted a *de novo* review of Judge Schroeder's rulings and considered the parties' submissions to date. For the reasons stated below, the Court adopts Judge Schroeder's R&R in part and rejects it in part.

## DISCUSSION

**I.    The Motion to Dismiss**

Dr. Gosy's arguments for dismissal can be organized into two main groups: arguments attacking Counts 1-148, the "Unlawful Distribution Counts," and arguments attacking Counts 149-166, the "Health Care Fraud Counts." The Court addresses these arguments in turn.

1

### A. The Unlawful Distribution Counts

Count 1 charges Dr. Gosy with conspiracy to distribute or dispense controlled substances other than for a legitimate medical purpose and not in the usual course of professional practice in violation of section 846 of the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq*. (the "CSA").

Counts 2-148 charge Dr. Gosy with distributing and dispensing controlled substances other than for a legitimate medical purpose and not in the usual course of professional practice in violation of section 841(a)(1) of the CSA. Counts 2, 3, and 4 also allege that three deaths resulted from the use of the controlled substances Dr. Gosy dispensed, triggering a penalty enhancement of a 20-year minimum term of imprisonment and a maximum term of life. § 841(b)(1)(C).

#### 1. Intent to Distribute Outside the Course of Professional Practice

First, Dr. Gosy argues that Counts 1-148 should be dismissed because they fail to allege not only that Dr. Gosy intended to distribute controlled substances, but also that he intended to distribute them outside the course of professional practice. This defect, he claims, puts him at risk of being criminally convicted for mere medical malpractice.

To the contrary, "in a criminal prosecution [a] physician may be found guilty only upon proof beyond a reasonable doubt that he acted outside the scope of medical practice, as distinguished from the lesser burden assumed in a civil malpractice suit." *United States v. Vamos*, 797 F.2d 1146, 1153 (2d Cir. 1986). "It is only when a physician acts outside the proper realm of medical practice to distribute controlled substances that he acts as a 'drug pusher' rather than as a medical professional." *United States v. Wexler*, 522 F.3d 194, 206 (2d Cir. 2008).

Here, the indictment does not put Dr. Gosy at risk of being criminally convicted for mere medical malpractice. A jury would need to find beyond a reasonable doubt that Dr. Gosy acted outside of the scope of professional practice to convict him. Accordingly, Judge Schroeder properly rejected this argument.

### 2. Standard for "Legitimate Medical Purpose" and "Professional Practice"

Second, Dr. Gosy argues that Counts 1-148 of the indictment should be dismissed because they fail to define a standard for "legitimate medical purpose" and "professional practice." But the indictment need not do so. The requirement that a doctor only dispense controlled substances for a legitimate medical purpose and in the usual course of professional practice already

> has an objective meaning that prevents arbitrary prosecution and conviction: Neither the government nor the jury is free to impose its own subjective views about what is and is not appropriate; rather, the government is obliged to prove, and the jury constrained to determine, what the medical profession would generally do in the circumstances.

*United States v. Quinones*, 536 F. Supp. 2d 267, 274 (E.D.N.Y. 2008). Whether the Government can prove that Dr. Gosy's actions objectively exceeded the bounds of professional practice is an issue for trial, not for a motion to dismiss. *See id.* at 272 ("whether conduct is outside the bounds of professional practice is a jury question"); *see also United States v. Collier*, 478 F.2d 268, 272 (5th Cir. 1973) (holding that "what constitutes a *bona fide* medical practice must be determined upon consideration of evidence and attending circumstances" and that "[t]he statutes affecting medical practice need not delineate the precise circumstances constituting the bounds of permissible practice").

Accordingly, Judge Schroeder properly rejected this argument.

### 3. Unconstitutionality in Counts 2-4

Third, Dr. Gosy argues that Counts 2-4, the "death results from" counts, should be dismissed because the statute upon which they are based, 21 U.S.C. §841(b)(1)(C), is a strict liability statute which unconstitutionally imposes the 20-to-life penalty enhancement without requiring a *mens rea*, proximate cause, or foreseeability of the death.

Courts have rejected this argument. For example, in *United States v. Stacy*, No. S1409CR0605RWSAGF, 2010 WL 2039660 (E.D. Mo. May 21, 2010), the court observed that

several cases have "distinguishe[d] between the specific intent necessary for the unlawful act of distribution, § 841(a)(1), and the strict liability punishment based on whether death or serious injury resulted from the drug's use, § 841(b)(1), and [have held] that such a scheme is constitutional." *Id.* at *6. The court also cited cases holding that the resulting death need not have been foreseeable. *Id.*

Judge Schroeder rejected this argument based on *Burrage v. United States*, 571 U.S. 204, 218-19 (2014), in which the Supreme Court held that the "death results from" enhancement applies only if the controlled substance is a "but for" cause of the death. While *Burrage* "expressly declined to decide whether the phrase 'results from' also embodies a proximate-cause requirement," *United States v. Burkholder*, 816 F.3d 607, 618 (10th Cir. 2016), several pre-and post-*Burrage* cases have decided that it does not. *See United States v. Harden*, 893 F.3d 434, 447-48 (7th Cir. 2018) (observing that every federal court of appeals to address the issue has held that proximate cause is not required and joining those courts).

Dr. Gosy points to no authority holding 21 U.S.C. §841(b)(1)(C) to be unconstitutional, and this Court finds none.

Accordingly, this Court adopts Judge Schroeder's R&R as to Counts 1-148 and denies Dr. Gosy's Motion to Dismiss those counts.

### B. The Health Care Fraud Counts

Counts 149-166 allege that Dr. Gosy conspired to, and did, defraud the New York State Insurance Fund and other Health Care Benefit Programs (collectively "HCBPs") by, among other things, submitting claims for prescriptions issued and services performed without a legitimate medical purpose (Count 149), and submitting claims which falsely represented that Dr. Gosy had

personally and actively supervised his staff's performance of medical services when, in fact, he was not present at his office or even in the state or country (Counts 150-166).

Dr. Gosy raises three main arguments for dismissal of Counts 149-166.

First, he argues that Counts 149-166 are legally insufficient because:

a) They fail to allege an intent to defraud or financially harm the HCBPs;

b) The facts as alleged, even if true, cannot establish criminal fraud, because any misrepresentations Dr. Gosy made regarding his supervision of medical services are irrelevant to the ultimate nature or quality of those services and therefore amount, at most, to mere deceit, not criminal fraud; and

c) They omit exculpatory facts, such as that Dr. Gosy could answer his staff's questions by phone, text, or email, even if he was not physically present in the office, and that another qualified physician was always present in the office.

Second, he argues that the health care fraud statute he is alleged to have violated, 18 U.S.C. § 1347, is "void for vagueness" because it incorporates or is defined by other rules, regulations, and laws; in this case, the regulations of the New York Workers Compensation Board ("NYWCB") and the New York Workers' Compensation Law ("NYWCL").[1]

Third, he argues that Counts 149-166 are multiplicitous, duplicitous, and/or contain surplusage.

As Judge Schroeder did not address Dr. Gosy's first two arguments in his R&R, Dr. Gosy asks this Court to consider them in the first instance. The Court obliges.

**1. Legal Sufficiency**

Contrary to Dr. Gosy' contentions, Counts 149-166 of the indictment are legally sufficient. "The Second Circuit has 'consistently upheld indictments that do little more than track the

---

[1] As part of Dr. Gosy's, medical practice, he was authorized by the New York State Workers' Compensation Board ("NYWCB") to provide services to patients with Workers' Compensation claims. The NYWCB and NYWCL allegedly require physicians—not mid-level providers such as physician's assistants ("PAs") or nurse practitioners ("NPs")—to treat or supervise the treatment of patients.

5

language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'" *United States v. Soliman*, No. 06-CR-236A, 2008 WL 2690281, at *1-2 (W.D.N.Y. July 1, 2008) (internal citation omitted) (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). In *Soliman*, the court found that an indictment nearly identical to the one here was legally sufficient where, as here, it tracked the statute, 18 U.S.C. § 1347, and then went on to describe the alleged scheme to defraud with specificity. The court held that the indictment contained all of the elements of the offenses charged and informed the defendant of the charges against him with sufficient specificity. *Id.* at *3. The indictment here is sufficient for the same reasons. Nevertheless, the Court addresses Dr. Gosy's specific attacks on the indictment's legal sufficiency.

### a) Failure to Allege Intent to Defraud or Harm

In support of his argument that the indictment fails to allege an intent to defraud or harm, Dr. Gosy relies on *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007). There, the Second Circuit stated that an indictment "is required to allege that the defendant contemplated actual harm that would befall victims due to his deception in order to meet the 'scheme to defraud' prong." This proposition is dubious, however, because the case that the *Shellef* court cited in support, *United States v. Novak*, 443 F.3d 150, 156 (2d Cir. 2006), only discussed the *proof* that was required for a fraud conviction, not the sufficiency of an *indictment*.

Further, several other cases suggest that an intent to defraud or harm need not be alleged in the indictment. In *United States v. Wey*, No. 15-CR-611 (AJN), 2017 WL 237651, at *9 (S.D.N.Y. Jan. 18, 2017), the court rejected the argument that the indictment was defective for failing to allege fraudulent intent and explained that the defendant had "conflate[d] the standard

6

for sufficiency of the Government's *proof at trial* with the categorically less demanding standard for sufficiency of the Indictment's *allegations*."

In *United States v. Davis*, No. 13-CR-923 (LAP), 2017 WL 3328240 (S.D.N.Y. Aug. 3, 2017), the court noted *Shellef* but acknowledged that "there is some authority for the proposition that this scienter requirement [of intent to harm] need not be 'explicitly alleged' in the charging document." *Id.* at *27 (citing *United States v. Gelzer*, 50 F.3d 1133, 1138 (2d Cir. 1995) (finding indictment was sufficiently pled where it tracked the statute and the statute did not explicitly mention that knowledge was a required element)).

In *United States v. Hall*, No. 2:10-CR-154, 2011 WL 6291957, at *7 (D. Vt. Dec. 15, 2011), the court explained that, "[s]ince . . . 'intent[ ] to mislead' is a part of the commonly understood meaning of the word 'fraud' itself, the government need not specifically mention the words "specific intent" in the indictment for it to be valid." *See also United States v. Ferguson*, 478 F. Supp. 2d 220, 231 (D. Conn. 2007) ("[I]n cases where the indictment does allege a scheme to defraud, the indictment need not separately allege an intent to harm."); *United States v. Ashley*, 905 F. Supp. 1146, 1156 (E.D.N.Y. 1995) (finding that "indictment at issue is not insufficient for failure to specifically allege fraudulent intent").

The Court thus holds that the indictment is not insufficient for failing to explicitly allege an intent to defraud or harm.

### b) Whether Dr. Gosy's Misrepresentations Amount to Fraud

In support of his argument that any misrepresentations he made regarding his supervision of medical services amount to mere deceit, not criminal fraud, Dr. Gosy relies on various mail and wire fraud cases, including *United States v. Binday*, 804 F.3d 558, 578 (2d Cir. 2015), *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1182 (2d Cir. 1970), and *United States v. Starr*,

7

816 F.2d 94, 98-99 (2d Cir. 1987). Those cases hold that, under the mail and wire fraud statutes, "not every deceit is actionable. Rather, the deceit 'must affect the very nature of the bargain itself,' such as by creating a 'discrepancy between benefits reasonably anticipated because of the misleading representations and the actual benefits which the defendant delivered, or intended to deliver.'" *Binday*, 804 F.3d at 568 (quoting *Starr*, 816 F. 2d at 98). Here, Dr. Gosy argues that since his patients actually received the medical services they (and ultimately the HCBPs) were billed for, whether Dr. Gosy lied about having supervised those services is irrelevant.

To the contrary, physicians' lies about their supervision of services have resulted in health care fraud convictions. *See United States v. Kuthuru*, 665 F. App'x 34, 40 (2d Cir. 2016) (summary order) (affirming conviction of billing manager who submitted Medicare claims falsely indicating that the doctor had personally performed services or directly supervised staff when in fact he was out of state); *United States v. Singh,* 390 F.3d 168, 175 (2d Cir. 2004) (affirming conviction of physician whose practice billed as if the physician had performed or supervised services when he was not present at the practice); *cf. United States v. Gabinskaya*, 829 F.3d 127, 130 (2d Cir. 2016) (affirming conviction of physician who submitted claims falsely representing herself as the owner of a medical practice). Accordingly, the allegations here, if true, could establish health care fraud, and the Court rejects Dr. Gosy's argument on this ground.

### c) The Indictment Omits Exculpatory Facts

Dr. Gosy's argument that the indictment should be dismissed because it omits relevant exculpatory facts, such as that Dr. Gosy was available to "supervise" his staff by phone, email, or text, also fails. "[T]he failure to include exculpatory evidence in [an] indictment is wholly consistent with federal criminal procedure . . . ." *Williams v. United States*, No. CIV A 2:04CV129, 2006 WL 2993062, at *5 (E.D. Va. Oct. 19, 2006); *see also United States v. Williams*,

504 U.S. 36, 36 (1992) (holding that the prosecution has no duty to present exculpatory evidence during grand jury proceedings).

Accordingly, the Court denies Dr. Gosy's motion to dismiss Counts 149-166 based on the insufficiency of the indictment.

2. **Void for Vagueness**

Dr. Gosy next argues that the health care fraud statute he is charged with violating, 18 U.S.C. § 1347, is void for vagueness because it impermissibly incorporates or relies on the NYWCB's rules and laws to define the conduct it criminalizes.

Courts have rejected similar arguments. For example, in *United States v. Sachakov*, 812 F. Supp. 2d 198 (E.D.N.Y. 2011), the defendant argued that section 1347 is unconstitutionally vague because it incorporates Medicare rules on billing submissions and codes. *Id.* at 213. The court observed that, although the Second Circuit has not yet ruled on this issue, other circuit courts have rejected similar vagueness challenges. *Id.* at 212-13 (citing *United States v. Franklin–El*, 554 F.3d 903 (10th Cir. 2009) and *United States v. Janati*, 237 F. App'x 843 (4th Cir. 2007)). Aligning itself with the Tenth and Fourth Circuits, the *Sachakov* court held that

> The health care fraud statute provides sufficient notice to alert "ordinary people [as to] what conduct is prohibited." *Arriaga* [*v. Mukasey*], 521 F.3d [219,] 224 [(2d Cir. 2008)]. The language of the statute is unambiguous on its face. Nor does the statute, in its own terms, rely on or incorporate the [Medicare or American Medical Association's manuals] to define the conduct it criminalizes. Any ambiguity in those manuals does not create ambiguity in an otherwise unambiguous statute. The meaning of fraud is clear.
>
> The statute's scienter requirement provides further protections for the defendant. By requiring that the government prove that the defendant's conduct was knowing and willful, 18 U.S.C. § 1347(a), the statute avoids criminalizing innocent errors caused by a mistaken interpretation of the manual. It does not confer an impermissible degree of discretion on law enforcement authorities.

*Id.* at 213.

Similarly, here, as the Government argues, the health care fraud statutes do not incorporate NYWCB rules and regulations pertaining to the submission of workers' compensation claims. The indictment only references these rules and regulations to put Dr. Gosy on specific notice as to the fraud he is alleged to have committed and the means by which he committed it. Dr. Gosy's claims that these rules and regulations are "confusing" and "nonbinding" may function as a defense at trial, but they do not render the health care fraud statutes unconstitutionally vague.

Accordingly, the Court denies Dr. Gosy's motion to dismiss Counts 149-166 on this basis.

### 3. Multiplicity/Duplicity/Surplusage

Finally, Dr. Gosy argues that Counts 149-166 are multiplicitous and/or duplicitous because they each incorporate the allegations of Count 1 by reference. He also argues that the incorporation of Count 1 into Counts 149-166 constitutes surplusage which should be stricken.

#### a) Multiplicity

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed. This violates the Double Jeopardy Clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Thus, "the critical double jeopardy inquiry is not factual, *i.e.*, whether the same conduct is at issue in charges brought under different statutes, but legal, *i.e.*, whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *United States v. Basciano*, 599 F.3d 184, 198 (2d Cir. 2010).

Here, as Judge Schroeder found, the incorporation of Count 1 into Counts 149-166 does not make those counts multiplicitous because they each still require proof of facts that Count 1 does not. While the allegations in Count 1 are repeated in Counts 149-166, those counts do not actually charge Dr. Gosy with the offense charged in Count 1. Counts 149-166 contain their own charging language which charges Dr. Gosy with fraud and conspiracy to commit fraud, whereas Count 1 only charges him with conspiracy to unlawfully dispense controlled substances. Count 1 is therefore only charged against Dr. Gosy once.

### b) Duplicity

Dr. Gosy also argues that the incorporation of Count 1 into Counts 149-166 makes those counts duplicitous. "An indictment is duplicitous if it joins two or more distinct crimes in a single count." *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). The Government argues, and Judge Schroeder found, that Counts 149-166 are not duplicitous because their incorporation of Count 1 was done merely for the purpose of describing the means by which Dr. Gosy committed fraud, and proof of many of the allegations in Count 1 will be relevant to Counts 149-166.

Courts have found that the incorporation of several allegations of one count into another count does not necessarily make the counts duplicitous. *See United States v. Vilar*, No. 05 CR. 621 (RJS), 2008 WL 4298545, at *2 (S.D.N.Y. Sept. 5, 2008) (citing *United States v. Rittweger*, 259 F. Supp. 2d 275, 289 (S.D.N.Y. 2003) ("Counts Two through Twelve incorporate by reference the background, means and methods, and overt act allegations of Count One. Such incorporation is explicitly contemplated by Federal Rule of Criminal Procedure 7(c)(1). Further, courts in this Circuit have consistently recognized that mere incorporation of previously alleged factual allegations does not make a count impermissibly duplicitous.").

11

In *Rittweger*, Counts One and Nine both charged separate conspiracies. 259 F. Supp. 2d at 279. Count Nine incorporated paragraphs 1-42 and 46-47 of Count One. *Id.* at 289. Defendant argued that this made Count Nine duplicitous. *Id.* The court disagreed, noting that the specific charging language in paragraphs 43-45 of Count One were not incorporated into Count Nine, and that the conspiracies alleged in both counts, while related, were unique. *Id.*

Here, Counts 149-166 incorporate all the paragraphs of Count 1, but the allegations in Count 1 are relevant to Counts 149-166, and the conspiracies are distinct. Judge Schroeder correctly found that the incorporation of Count 1 into Counts 149-166 does not make Counts 149-166 duplicitous. Accordingly, this Court adopts Judge Schroder's recommendation to deny Dr. Gosy's Motion to Dismiss based on multiplicity and duplicity.

The Court also adopts Judge Schroeder's recommendation to deny Dr. Gosy's request to strike the allegations of Counts 1 from Counts 149-166 as surplusage, except with respect to paragraph 33(a) and 33(b) of Count 1. That paragraph contains the specific charging language of the conspiracy alleged in Count 1 and is surplusage with respect to Counts 149-166. *Id.* The Court thus grants Dr. Gosy's request in part and strikes paragraph 33(a) and 33(b) of Count 1 from Counts 149-166.

**II.    The Motion to Controvert the Search Warrant and Suppress Evidence ("Motion to Suppress")**

The indictment in this case was preceded by searches of Dr. Gosy's office and the computer system on which his practice's files were stored. FBI Special Agent David Budz applied for the search warrants. The warrant applications incorporate a 70-paragraph probable cause affidavit describing SA Budz's interviews with several confidential witnesses. The applications also include two attachments: Attachments A and A1, which describe the premises to be searched for each warrant; and Attachments B and B1, which list the items to be seized for each warrant with

12

reference to the statute Dr. Gosy was alleged to have violated.[2] United States Magistrate Judge Jeremiah J. McCarthy issued the warrants.

Dr. Gosy moves to suppress the fruits of the searches because: a) Judge McCarthy lacked probable cause, b) the warrants lacked particularity, and c) the warrants lacked a search protocol and were therefore overbroad. The Court addresses these arguments in turn.

**A. Probable Cause**

Dr. Gosy argues that Judge McCarthy lacked probable cause to issue the search warrants because SA Budz's applications were based on conjecture and surmise and omitted facts that would have influenced Judge McCarthy's decision to issue the warrants. As examples of conjecture and surmise, Dr. Gosy points to statements from witnesses that Dr. Gosy failed to adequately supervise PAs and NPs and that 90% of his practice was treating Workers' Compensation patients (ECF Nos. 83, ¶¶ 151-158; 112 at 59). As examples of omissions, he points out that the applications failed to disclose that one of the witnesses was an employee who had been fired from Dr. Gosy's practice. *Id.*

Judge Schroeder correctly rejected these arguments, giving appropriate deference to Judge McCarthy's probable cause determination. "In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the 'totality of circumstances' bearing upon its reliability." *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1984) and *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991)). "The task of the issuing magistrate is simply to make a practical, common-sense

---

[2] Attachments A and B apply to the warrant for the Gosy office, and attachments A1 and B1 apply to the warrant for the computer system. From now on, for clarity, Attachments B and B1, which describe the items to be seized for each warrant, will be collectively referred to as Attachment B.

13

decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Smith*, 9 F.3d at 1012. Thus, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Gates*, 462 U.S. at 238-39.

Here, Judge Schroeder found that SA Budz's affidavit contained 70 "descriptive paragraphs of his interviews of various employees of the defendant who described in detail the various practice procedures that were utilized in the defendant's medical practice for issuing prescriptions, bills to insurance companies and patient notekeeping," and that these paragraphs, in totality, more than sufficed to provide probable cause. ECF No. 111 at 23. To the extent that the few examples Dr. Gosy cites are actually conjecture or surmise, "[p]robable cause . . . need not be based on direct, firsthand, or 'hard' evidence." *United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir. 1985). Dr. Gosy also fails to explain how the disclosure of the fact that one of the witnesses was fired would have influenced Judge McCarthy's decision to issue the warrant.

Dr. Gosy requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) on these issues. The purpose of a *Franks* hearing is to determine whether law enforcement officers made untruthful statements or omissions in their application for a search warrant. *United States v. Montague*, No. 14-CR-6136-FPG, 2017 WL 3483665, at *4 (W.D.N.Y. Aug. 15, 2017). To justify a *Franks* hearing, "a defendant must make a 'substantial preliminary showing' that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard

for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *Id.* (quoting *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998)).

Dr. Gosy satisfies neither of these criteria. He makes no argument, let alone a substantial showing, that SA Budz deliberately or recklessly disregarded the truth, and makes only a conclusory assertion that the omission of the fact that one of the witnesses was fired was necessary to Judge McCarthy's probable cause finding. Judge Schroeder found that that omission "would in no way 'materially' affect or negate the findings of probable cause." ECF No. 111 at 32. Dr. Gosy provides no reason why this finding should be disturbed, and this Court likewise finds none.

Accordingly, the Court adopts Judge Schroeder's recommendation to deny Dr. Gosy's Motion to Suppress based on a lack of probable cause.

### B. Particularity

Dr. Gosy next argues that the search warrants were not adequately particularized.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or things to be seized." U. S. Const. amend. IV (emphasis added). A warrant must also "identify the specific offense for which the police have established probable cause. . . . [and] specify the items to be seized by their relation to designated crimes." *United States v. Galpin*, 720 F.3d 436, 445 (2d Cir. 2013). A warrant that does not meet these requirements is facially invalid. *See Groh v. Ramirez*, 540 U.S. 551, 557 (2004) (holding that search warrant which failed to particularly describe the things to be seized was facially invalid); *United States v. Robinson*, No. 16-CR-545 (S-3)(ADS), 2018 WL 5928120, at *7 (E.D.N.Y. Nov. 13, 2018) ("The absence of any language particularizing the relevant crimes makes the warrant facially invalid.").

Here, Dr. Gosy argues that Attachments B's reference to the statutes he allegedly violated was insufficient to particularize the warrants.

However, the cases Dr. Gosy relies on are distinguishable. In one case, the warrant referenced the statute that the defendant allegedly violated but did not list any particular items to be seized. *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992). Instead, the warrant merely directed the executing officers to seize "evidence" of a violation of the cited statute. *Id.* at 76. In the other case, the opposite occurred: the warrant contained a list of items to be seized but did not reference the statute or otherwise specify the criminal activity being investigated. *United States v. Cheruvu*, No. 14-CR-130S, ECF No. 67 at 4 (W.D.N.Y. Apr. 12, 2016).

Here, Attachment B to the warrant includes both. "The combination of the illustrative list in Attachment B and the focus on a specific crime properly limited the warrant to the probable cause adduced in the warrant affidavit." *United States v. Pugh*, No. 1:15-CR-00116-NGG, 2015 WL 9450598, at *21 (E.D.N.Y. Dec. 21, 2015) (collecting cases holding that warrants which broadly describe the items to be seized with respect to the alleged crimes and contain an illustrative list of items to be seized are sufficiently particularized).

Dr. Gosy also suggests that Attachment B was not properly incorporated into and attached to the search warrants, rendering them facially invalid.

"[T]he Supreme Court [has] recognized, without deciding the issue, that 'most Courts of Appeals have held that a court may construe a warrant with reference to the supporting application or affidavit if the warrant uses words of incorporation, and if the supporting document accompanies the warrant.'" *United States v. Waker*, 463 F. Supp. 2d 348, 362 (W.D.N.Y. 2006), *aff'd*, 534 F.3d 168 (2d Cir. 2008) (quoting *Groh*, 540 U.S. at 558). Here, the warrants instruct the reader to "See Attachment B" for the description of the property to be seized. This is sufficient

16

to incorporate Attachment B. *See United States v. Beal*, 730 F. App'x 30, 33 (2d Cir. 2018) (summary order) (citing *Groh* and holding that warrant which stated "See Attachment B" for the description of property to be seized was not facially deficient); *United States v. Towne*, 997 F.2d 537, 548-49 (9th Cir. 1993) (finding "no question that Attachment B was incorporated by reference in the search warrant" through the words "See Attachment B"); *United States v. Burke*, No. CR 09-60007-AA, 2010 WL 4641695, *1 (D. Oregon Nov. 4, 2010) (finding that "'See Attachment B" is a plain an straightforward manner to incorporate the attachment by reference").

To the extent Dr. Gosy suggests that Attachment B was not physically attached to or did not accompany the warrants, he fails to create an issue of fact. He has not submitted an affidavit to that effect, nor has he requested an evidentiary hearing on the issue. He merely makes the speculative and conclusory assertion that the attachment and incorporation of Attachment B into the warrants "did not take place here." ECF No. 83, ¶ 171. *See United States v. Hernandez*, No. 09 CR 625 (HB), 2010 WL 26544, at *7, n.4 (S.D.N.Y. Jan. 6, 2010) (where defendant's brief suggested that attachment may not have been actually attached to the warrant, but defendant did not support his speculation with a factual affidavit or request an evidentiary hearing, he failed to create a factual dispute).

Accordingly, the Court adopts Judge Schroeder's recommendation to deny Dr. Gosy's Motion to Suppress based on a lack of particularity.

**C. Protocol/Overbreadth**

Intermingled with his particularity arguments, Dr. Gosy argues that the search warrants were overbroad because they lacked any search protocols.[3] Judge Schroeder properly rejected

---

[3] "Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *United States v. Cohan,* 628 F. Supp. 2d 355, 359 (E.D.N.Y. 2009) (quoting *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006)). Protocol deals with how the search is conducted. *See Vilar*, 2007 WL 1075041, at *37.

these arguments based on *Dalia v. United States*, 441 U.S. 238 (1979) and *Galpin*, 720 F.3d at 445.

In *Dalia*, the Supreme Court explained that the details of how to perform a search are generally left to the discretion of the executing officers. 41 U.S. at 257. In *Galpin*, the Second Circuit held that "we have not required specific search protocols or minimization undertakings as basic predicates for upholding digital search warrants, and we do not impose any rigid requirements in that regard at this juncture." 720 F. 3d at 451; *see also Pugh*, 2015 WL 9450598, at *23 (upholding warrant that lacked search protocol); *United States v. Alston*, No. 15 CR. 435 (CM), 2016 WL 2609521, at *7 (S.D.N.Y. Apr. 29, 2016) (holding that, consistent with *Galpin* and *Dalia*, "courts in this District have repeatedly declined . . . to find searches conducted without such protocols to be impermissible").

The Court thus adopts Judge Schroeder's recommendation to deny Dr. Gosy's Motion to Suppress based on a lack of protocols and overbreadth.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Judge Schroeder's R&R (ECF No. 111) in all respects except that it REJECTS its recommendation to deny the motion to strike surplusage. The Court STRIKES paragraph 33(a) and 33(b) of Count 1 from Counts 149-166. Dr. Gosy's Motion to Dismiss and Motion to Suppress (ECF No. 83) are DENIED.

IT IS SO ORDERED.

Dated: February 27, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court